UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RADIANT GLOBAL LOGISTICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH IAN DRUMMOND, et al.,<br><br>Defendants. | CASE NO. C18-1063JLR<br><br>ORDER DENYING MOTION TO DISMISS |

# I.  INTRODUCTION

Before the court is Defendants Kenneth Ian Drummond and Maureen Drummond's ("the Drummonds") motion to dismiss Plaintiff Radiant Global Logistics, Inc.'s ("Radiant") complaint for lack of personal jurisdiction, improper venue, and *forum non conveniens*.  (MTD (Dkt. # 6); *see also* Compl. (Dkt. # 1).)  The court has considered the motion, all submissions filed in support of and opposition to the motion, other

relevant parts of the record, and the applicable law. Being fully advised,[1] the court DENIES the Drummonds' motion as more fully described herein.

## II. BACKGROUND

Beginning in 1998, the Drummonds owned and operated Border Express, a freight shipping company based in British Columbia, Canada. (Drummond Decl. (Dkt. # 7) ¶ 3.) The primary business of Border Express was to ship freight between Washington State and British Columbia. (Spisak Decl. ¶ 2.) At its peak, Border Express employed 26 people and reported gross revenue of $6,272,391.00 CDN in fiscal year 2017. (Drummond Decl. ¶ 3.)

Radiant is a global shipping logistics company headquartered in Bellevue, Washington. (Spisak Decl. (Dkt. # 9) ¶ 2.) In 1998, Radiant and Border Express entered into a Transportation Services Agreement ("the TSA"). (*Id.* ¶ 2, Ex. A; Drummond Decl. ¶ 4, Ex. A.) Under the TSA, Radiant and Border Express shared gross profits from freight shipments, with Radiant paying Border Express a weekly commission for its share of the gross margin on shipments invoiced the previous week. (Spisak Decl. ¶ 3.) In addition, if Border Express notified Radiant of scheduled shipments, Radiant would advance the amount Border Express requested to cover expenses for trans-border truckload operations, such as permits and fuel. (*Id.* ¶ 4.) Any advance payments would be deducted from Border

//

---

[1] No party requests oral argument (*see* MTD at title page; Resp. (Dkt. # 8)), and the court does not consider oral argument helpful to its disposition of this motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

Express's share of the gross profits or, if necessary, the "bad debt reserve" that Border Express was required to maintain under the TSA. (*Id.*)

In late 2017, Border Express accumulated hundreds of "open" orders for which Border Express requested and received advance payments from Radiant but for which Border Express had not issued an invoice to any customer. (*Id.* ¶ 5.) In late January 2018, Radiant's Regional Vice President, Mark Spisak, traveled to Border Express's office in British Columbia to assist Ms. Drummond in closing as many of the open orders as possible by invoicing the appropriate customers. (*Id.* ¶ 6.) After reviewing hundreds of open orders, Ms. Drummond admitted to Mr. Spisak that Border Express had actually made shipments on fewer than 50 of the open orders, and that Border Express could not issue invoices for the remaining open orders because Border Express had never made those shipments. (*Id.*)

Border Express did not have sufficient funds in its bad debt reserve to repay Radiant's advances for the open orders that Border Express could not invoice. (*Id.* ¶ 7.) Ms. Drummond told Mr. Spisak that Border Express needed to continue its trans-border freight shipment business to generate sufficient revenue to eventually repay Radiant. (*Id.*) Mr. Spisak informed Ms. Drummond that Radiant would need security for the bad debt if Radiant was going to continue working with Border Express. (*Id.*; *see also* Drummond Decl. ¶ 5 ("In January of 2018, I was notified by Radiant that no advances would be sent to Border Express because it had accumulated a large debt under the [TSA].").)

//

Mr. Spisak returned to Border Express's British Columbia offices in February 2018. (Drummond Decl. ¶ 6; *see also* Spisak Decl. ¶ 8 ("On February 1, 2018, I returned to Border Express's offices in Surrey.").) Ms. Drummond attests that Mr. Spisak stayed for several hours and told her that the only way that Radiant would advance enough money to Border Express for Border Express to make its payroll would be for her to agree to and sign certain documents. (Drummond Decl. ¶ 6.) She testifies that Mr. Spisak printed out several documents in Border Express's office, including three personal guaranties, a security agreement, Border Express resolutions, a pledge agreement, and a promissory note. (*See id.* ¶ 6, Exs. B-H.) She attests that she did not understand the documents, no one explained them to her, and no one advised her to seek the advice of counsel. (*Id.* ¶ 7.)

Ms. Drummond also attests that, while she was meeting with Mr. Spisak, she received a call from her son, who informed her that he had been diagnosed with advanced throat cancer and would need to immediately undergo surgery and other therapies. (*Id.* ¶ 8.) She states that she was very upset and thereafter had trouble understanding what was happening. (*Id.*) Nevertheless, she signed the personal guaranties but did not understand their effect. (*Id.*) After she had signed the personal guaranties, she realized that she should not sign the remaining documents without seeking the advice of counsel. (*Id.* ¶ 9.) Ultimately, she refused to sign any of the remaining documents and did not receive any additional funds from Radiant. (*Id.*)

Mr. Spisak's testimony concerning the events surrounding Ms. Dummond's execution of the personal guaranties differs in important respects from Ms. Drummond's

testimony.  (*Compare id.* ¶¶ 6-9 *with* Spisak Decl. ¶¶ 8-13.)  Mr. Spisak declares that on February 1, 2018, he returned to Border Express's offices in British Columbia and presented Ms. Drummond with a personal guaranty under which Radiant would not terminate the TSA if the Drummonds personally guaranteed payment of Border Express's debt to Radiant.  (Spisak Decl. ¶ 8.)  Ms. Drummond then signed the document under which both she and Mr. Drummond provided a personal guarantee to Radiant.  (*Id.* ¶ 10.)

Mr. Spisak attests that at no time during his meeting with Ms. Drummond on February 1, 2018, did she receive news that her son had been diagnosed with advanced throat cancer or that he would need surgery or other treatments.  (*Id.* ¶ 9.)  Indeed, Mr. Spisak states that Ms. Drummond's son had told him in December 2017 that he had been sick since October 2017, and that Ms. Drummond "was well aware of [her son's] poor health before February 2018."  (*Id.*)  Mr. Spisak states that he did not attempt to pressure Ms. Drummond into signing any document that she did not feel comfortable signing at that time.  (*Id.* ¶ 10.)

Mr. Spisak also testifies that after he left Ms. Drummond's office, he spoke with certain colleagues at Radiant and they determined that the Drummonds should each sign individual personal guarantees in lieu of the single document that Ms. Drummond had signed on February 1, 2018.  (*Id.* ¶ 11.)  Mr. Spisak attests that he discussed this with Ms. Drummond the next morning on February 2, 2018, and emailed her two separate personal guaranty documents—one for her and one for Mr. Drummond.  (*Id.* ¶ 11, Exs. B & C.)  Mr. Spisak states that Ms. Drummond signed both documents that same day—one on behalf of herself and the other on behalf of Mr. Drummond under a power of attorney.

(*Id.* ¶ 12, Exs. D & E.) Mr. Spisak further states that Ms. Drummond electronically scanned the guaranties she had signed and emailed them back to him. (*Id.* ¶ 12.) Finally, Mr. Spisak testifies that, during the week following February 2, 2018, he presented the remaining documents to Ms. Drummond, which were designed to establish a payment plan for the debt Border Express owed to Radiant, but she declined to sign any of these other documents. (*Id.* ¶ 13.)

Each of the guaranties also contains the following provision in paragraph 5.9:

> Governing Law; Jurisdiction. This Guaranty shall in all respects be governed by and construed in accordance with the laws of the State of Washington without reference to its choice of law rules. The GUARANTOR hereby expressly submits themself to the exclusive, personal jurisdiction of the federal and state courts situated in King County, State of Washington, waives any objection that they may now or hereafter have to the venue of any action in any such court or that any such action was brought in an inconvenient forum, and agrees not to plead or claim the same.

(Spisak Decl. ¶ 12, Exs. D & E; Drummond Decl. ¶ 6, Exs. B & C.)

Border Express ceased freight operations following Ms. Drummond's execution of the personal guaranties at issue here, and Radiant commenced an arbitration action under the TSA. (Compl. ¶ 11.) In June 2018, Border Express and Radiant entered into a settlement agreement. (*Id.*) Pursuant to the settlement agreement, Border Express terminated the TSA and acknowledged that Border Express owed Radiant $1,391,971.22. (Spisak Decl. ¶ 13; Compl. ¶ 12.) On June 22, 2018, Ms. Drummond signed a confession of judgment in the principal amount of $1,391,971.22 on behalf of Border Express and in favor of Radiant as part of the settlement agreement. (Drummond Decl. ¶ 11; Compl. ¶¶ 11-12.) On June 29, 2018, Ms. Drummond received notice that the judgment had been

filed in King County, Washington, pursuant to the settlement. (Drummond Decl. ¶ 11; Compl. ¶¶ 12-13, Ex. C.) She also received notice that Radiant filed a petition in a Canadian court to enforce the judgment against Border Express. (Drummond Decl. ¶ 11.)

On July 19, 2018, Radiant filed suit in the Western District of Washington to enforce the Drummonds' personal guaranties. (*See generally* Compl.) In the complaint, Radiant alleges that the Drummonds "agreed to the exclusive, personal jurisdiction of the federal and state courts situated in King County, Washington." (*Id.* ¶ 4.)

On August 16, 2018, the Drummonds filed a motion to dismiss based on lack of personal jurisdiction, improper venue, and *forum non conveniens*. (*See* MTD.) Radiant opposes the Drummonds' motion. (*See* Resp.) The court now considers the Drummonds' motion.

### III.   ANALYSIS

**A.   Standards**

When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, "[w]here, as here, the motion is based on written materials rather than an evidentiary hearing,[2] 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). The court "only inquire[s] into whether

---

[2] Whether to hold such a hearing on disputed facts and the scope and method of any such hearing is within the district court's discretion. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004). Here, no party has requested a hearing (*see generally* MTD; Resp.; Reply (Dkt. # 10)), and the court declines to hold one.

[the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Further, all uncontroverted allegations in the complaint are deemed true, and factual disputes are to be resolved in favor of the non-moving party. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017); *Schwarzenegger*, 374 F.3d at 800. Indeed, the court must resolve in the plaintiff's favor any conflicts between parties over sworn statements contained in affidavits or declarations. *See Morrill*, 873 F.3d at 1141; *Schwarzenegger*, 374 F.3d at 800.

**B.     The Forum Selection Clause**

The Drummonds argue that they have insufficient contacts with the forum for the court to exercise either general or specific personal jurisdiction over them. (MTD at 4-11.) They also argue that venue is improper under 18 U.S.C. § 1391(b)(2) because the events surrounding the execution of the personal guaranties took place in British Columbia and not Washington State. (MTD at 11.) Finally, they assert that the forum selection clauses contained in the two guaranties at issue are invalid. (*Id.* at 12-17.) Radiant opposes the Drummonds' motion and argues that the forum selection clauses in the guaranties are valid and dispositive with respect to the court's exercise of personal jurisdiction over the Drummonds and venue in this district. (Resp. at 7-11.)

Both personal jurisdiction and venue are waivable rights. *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)); *Reebok Int'l Ltd. v. TRB Acquisitions LLC*, No. 3:16-CV-1618-SI, 2017 WL 3016034, at *1 (D. Or. July 14, 2017) ("A defense of improper venue

is waivable.") (citing *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014)). Therefore, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964); *see also Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1396, 1406 (9th Cir. 1994). The court need not embark on a minimum contacts analysis where the defendants consent to the court's exercise of personal jurisdiction in the forum. *See Twitch Interactive, Inc. v. Johnston*, No. 16-CV-03404-BLF, 2018 WL 1449525, at *4 (N.D. Cal. Jan. 22, 2018) (citing *Craigslist, Inc. v. Kerbel*, No. C-11-3309, 2012 WL 3166798, at *6 (N.D. Cal. Aug. 2, 2012); *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1069 (N.D. Cal. 1991); *see also Allred v. Innova Emergency Med. Assocs., P.C.*, No. 18-CV-03633-WHO, 2018 WL 4772339, at *1 n.1 (N.D. Cal. Oct. 1, 2018) (noting that because the forum selection clause issue was dispositive, the court did not need to address the defendants' arguments regarding personal jurisdiction). The Ninth Circuit recognizes that accepting a forum selection clause evidences consent to both venue and personal jurisdiction in that forum. *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007); *see also United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 929 n.14 (9th Cir. 2009) (finding that a contract's forum selection clause is "consent to personal jurisdiction and venue"). Accordingly, the court's analysis of personal jurisdiction and venue must begin with an analysis of enforceability of the forum selection clauses at issue here.

Forum selection clauses are "presumptively valid" and "should be honored 'absent some compelling and countervailing reason.'" *Murphy*, 362 F.3d at 1140 (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). "The party challenging the

clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Id.* (quoting *Bremen*, 407 U.S. at 15). "*Bremen* recognized three reasons that would make enforcement of a forum selection clause unreasonable: (1) 'if the inclusion of the clause in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Id.* (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998)). The Drummonds argue that the clauses at issue are invalid on the basis of the first two *Bremen* grounds—fraud or overreaching and effectively depriving them of their day in court.[3] (MTD at 13-17.)

1. Fraud or Overreaching

To establish the invalidity of a forum selection clause on the basis of fraud or overreaching, the party resisting enforcement must "show that the *inclusion of that clause in the contract* was the product of fraud or coercion." *Peterson v. Boeing Co.*, 715 F.3d

---

[3] The Drummonds assert that the court lacks jurisdiction for one additional reason. There is no dispute that both of the personal guaranties signed by Ms. Drummond on behalf of herself and Mr. Drummond recite that Mr. Drummond and Ms. Drummond, respectively, are the guarantors of "NEWCO, LLC (hereinafter 'TRANS CO')." (*See* Spisak Decl. ¶ 12, Exs. D at 1 & E at 1; *see also* Drummond Decl. ¶ 6, Exs. B at 1 & C at 1.) Neither guaranty refers to Border Express. (*See id.*) Ms. Drummond attests that she has never heard of a company called NEWCO, LLC. (Drummond Decl. ¶ 3.) The Drummonds argue that the court should not enforce the forum selection clauses or exercise personal jurisdiction over the Drummonds due to this apparent error. (MTD at 12-13 ("It is axiomatic that in order to collect pursuant to a guaranty, the debt to be collected upon must be that of the debtor named in the guaranty. This fact alone merits dismissal by the court.").) This argument, however, goes to the substance of the dispute between Radiant and the Drummonds; it is not relevant to the enforceability of the forum selection clauses or the existence of personal jurisdiction.

276, 282 (9th Cir. 2013) (italics in original). "[S]imply alleging that one was duped into signing the contract is not enough." *Richards*, 135 F.3d at 1297 (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)); *see also Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998). Like the defendants in *Richards*, the arguments of the Drummonds concerning fraud and overreaching go the contracts or guaranties as a whole. (*See* MTD at 13-16.) The Drummonds do not argue that Radiant misled them as to the legal effect of the forum selection clauses themselves; nor do they argue that Radiant fraudulently inserted the clauses into the guaranties without their knowledge. (*See id.*) Rather, they argue generally that "[t]he circumstances surrounding the execution of the personal guaranties make it clear that Radiant overreached by taking unfair advantage of [Ms.] Drummond" and that she "did not understand the provisions of the personal guaranties" in general. (*Id.* at 13-14.) Thus, the Drummonds' claims of fraud and overreaching concerning the forum selection clauses fail.

Further, to the extent that Ms. Drummond's and Mr. Spisak's accounts vary concerning the circumstances under which Ms. Drummond signed the two guaranties at issue here, the court is required, at this point in the litigation, to credit Mr. Spisak's account. *See Morrill*, 873 F.3d at 1141; *Schwarzenegger*, 374 F.3d at 800. Mr. Spisak testifies that Ms. Drummond did not receive the news of her son's diagnosis during his meeting with her on February 1, 2018, and that she only signed the guaranties at issue here the next day, after he emailed copies of the documents to her. (*See* Spisak Decl. ¶¶ 9, 11, Exs. B & C.) Mr. Spisak testifies that Ms. Drummond then electronically scanned the signed documents and emailed them back to him. (*Id.* ¶ 11.) If one credits

this account, as the court must, Mr. Spisak was not even present when Ms. Drummond received the guaranties at issue in this suit. (*See id.* ¶¶ 9, 11.) Further, Mr. Spisak testifies that he did not attempt to pressure her into signing any documents that she did not feel comfortable signing during his February 1, 2018, meeting with her. (*Id.* ¶ 10.) Mr. Spisak's account, which the court must credit, does not support the conclusion that Radiant engaged in either fraud or overreaching.[4]

Finally, Ms. Drummond impliedly argues that she felt she had no choice but to sign the personal guaranties or Radiant would withhold the advances that would permit Border Express to make its payroll. (MTD at 13-14.) The fact that the Drummonds were under financial stress is not indicative of overreaching by Radiant. *Quiksilver, Inc. v. Juelle*, No. CV093535AHMRNBX, 2009 WL 10675047, at *2 (C.D. Cal. Dec. 23, 2009) (concluding that defendant's claim that he entered into a personal guaranty to avoid being "financially ruined" did not support a finding of duress where the defendant signed the guaranty for the benefit of himself and his company to obtain an extension of credit). Indeed, "[f]inancial pressures, even in the context of unequal bargaining power, do not

---

[4] The Drummonds also assert that Radiant took advantage of its sophistication and bargaining power when negotiating with the Drummonds. (*See* MTD at 15-16.) Even assuming that Radiant as a "global shipping logistics company" (Spisak Decl. ¶ 2) was larger than Border Express, there is no evidence in the record to support the Drummonds' assertion that the bargaining power of the parties "was wildly out of balance." (*See* MTD at 15.) As Ms. Drummond admits, Border Express was a substantial business operation—employing 26 people and reporting gross revenue of $6,272,391.00 CDN for fiscal year 2017. (Drummond Decl. ¶ 3.) Further, the Drummonds operated Border Express for approximately 20 years. (*Id.*) Thus, they were long-standing and sophisticated business operators in their own right. In any event, "a differential in power or education on a non-negotiated contract will not vitiate a forum selection clause." *Murphy*, 362 F.3d at 1141 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

constitute economic duress." *2215 Fifth St. Assocs. v. U Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 55 (D.D.C. 2001) (quoting *Goldstein v. S & A Rest. Corp.*, 622 F.Supp. 139, 145 (D.D.C. 1985)). For all of the foregoing reasons, the court declines to set aside the forum selection clauses on the basis or fraud or overreaching.

      2.  <u>Depriving Defendants of Their Day in Court</u>

The Drummonds also argue that enforcing the forum selection clauses will effectively deprive them of their day in court. (MTD at 16-17); *see Murphy*, 362 F.3d at 1140. "To render a forum selection clause unenforceable on hardship grounds, plaintiff must show that the selected forum is so gravely difficult and inconvenient for her that for all practical purposes she will be deprived of her day in court." *Baga v. ePlus Tech., Inc.*, No. C17-693 TSZ, 2017 WL 2774088, at *3 (W.D. Wash. June 27, 2017) (citing *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996)). The Drummonds argue that litigating in the Western District of Washington is difficult because they lack passports or enhanced drivers' licenses, Mr. Drummond is disabled and cannot travel to Washington, and Ms. Drummond's son, who is their "most likely witness," is presently being treated for cancer, rendering his ability to travel to Washington "unlikely." (MTD at 16-17.) They also argue that a venue in the Western District of Washington will increase their litigation costs at a time when their main source of income—Border Express—is shuttered. (*Id.* at 17.)

However, the Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 64 (2013), "appears to foreclose this [c]ourt's consideration of such convenience-based arguments."

*Baga*, 2017 WL 2774088, at *3. In *Atlantic Marine*, the Supreme Court held that where the parties have agreed to a contractually valid forum selection clause, a district court "should not consider arguments about the parties' private interests," such as inconvenience for the parties or their witnesses. 571 U.S at 64. As the Court noted, "[w]hatever inconvenience the parties would suffer by being forced to litigate in the contractual forum . . . was clearly foreseeable at the time of contracting." *Id.* (internal quotations and citations omitted).

Even if the court could consider these factors, however, the court would not set the forum selection clauses aside on the grounds the Drummonds argue here. Although the Drummonds may not presently possess passports or enhanced drivers' licenses, they have not indicated any reasons why they could not obtain such documents. Although Mr. Drummond may be permanently disabled (Drummond Decl. ¶ 2), the Drummonds have not indicated why his presence in the forum would be necessary. After all, Ms. Drummond has his power of attorney (*see id.* ("I am his attorney in fact.")), and no one has indicated that his testimony is necessary. Even if Mr. Drummond's testimony is necessary, there are ways of handling such situations under the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."); Fed. R. Civ. P. 32(a)(4)(B) (permitting the use of a deposition at trial if the witness is more than 100 miles from the place of the trial or outside the United States); Fed. R. Civ. P. 32(a)(4)(C) (permitting the use of a deposition at trial due to the age, illness, or infirmity of the witness); Fed. R. Civ.

P. 32(a)(4)(E) (permitting the use of a deposition at trial under other "exceptional circumstances" and "in the interest of justice"). The same would be true for the testimony of Ms. Drummond's son.

Finally, the court is not persuaded by the Drummonds' argument concerning the costs of litigating in Washington. (*See* MTD at 16-17.) First, if the court were to set aside the forum selection clause on this basis, the result would be to simply shift the costs of traveling to a foreign forum from one party to the other party. Second, "[f]ederal courts have upheld forum selection clauses requiring litigation in far more distant forums, such as England, Germany, and Mexico." *Copiers Nw. v. Johnson*, No. C16-1441JLR, 2017 WL 406168, at *3 (W.D. Wash. Jan. 31, 2017) (citing *Bremen*, 407 U.S. at 17-18 (validating a forum selection clause requiring a suit that had been brought in Florida to be litigated in England); *Adema Tech., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 662-63 (9th Cir. 2016) (enforcing a forum selection clause that gave Munich exclusive jurisdiction for "legal relations between the parties"); and *Argueta*, 87 F.3d at 325 (holding that a party's fear of persecution for returning to Mexico was "of no matter" in determining the reasonableness of the parties' forum selection clause)). In comparison, the costs of crossing the border between Washington and British Columbia to conduct litigation seem relatively insignificant. Thus, the court concludes that—even if it were to consider the inconvenience and costs the Drummonds would incur by litigating in the Western District of Washington—those costs and inconveniences are insufficient to invalidate the forum selection clauses at issue here.

//

Because the court concludes that the forum selection clauses in the Drummonds' personal guaranties are enforceable, the court has personal jurisdiction over the Drummonds and can properly exercise venue in this District.

**C.     Forum Non Conveniens**

The Drummonds argue that even if the court upholds the forum selection clauses in the personal guaranties, the court should nevertheless dismiss this case on grounds of *forum non conveniens*. (MTD at 17-21.) *Forum non conveniens* is "an exceptional tool to be employed sparingly, . . . [and not a] doctrine that compels plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). Ordinarily, in determining whether dismissal is warranted, courts look at a number of private and public interest factors. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) ("The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country.") However, under the Supreme Court's decision in *Atlantic Marine*, the court deems the private interest factors to "weigh entirely in favor of the preselected forum" where the parties' contract contains a valid forum selection clause. 571 U.S. at 64. Here, the court has determined that the forum selection clauses at issue are valid. *See supra* § III.B. Accordingly, the "district court may consider arguments about public-interest factors

//

//

//

//

only."[5] *See Atl. Marine*, 571 U.S. at 64. The "practical result" of the *Atlantic Marine* ruling is that forum selection clauses will "control except in unusual cases." *See id.*

The public interest factors the court considers include (1) administrative difficulties flowing from court congestion, (2) the local interest in having localized controversies decided at home, and (3) the interest in having the trial of a diversity case in a forum that is at home with the law. *Atl. Marine*, 571 U.S. at 63 n.6 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The Drummonds assert arguments only with respect to factors two and three.[6] (MTD at 19-22.)

The Drummonds argue that Canada has a "strong interest in protecting its citizens under Canadian tort law." (MTD at 20.) Yet, Radiant has not asserted any tort claims against the Drummonds. (*See generally* Compl.) Instead, Radiant argues that Washington has an interest in protecting Radiant, which is a Washington corporation, headquartered in Bellevue, Washington (Compl. ¶ 1), and in enforcing the personal guaranties Radiant obtained to secure the debt it had extended to a foreign contractual partner. (*See* Resp. at 16-17.)

//

//

---

[5] For this reason, the court does not consider the Drummonds' arguments that the private interest factors weigh in favor of litigating this dispute in British Columbia. (*See* MTD at 18-19.)

[6] With respect to factor number one, the Drummonds state in passing that "there is simply no reason to add to the congestion of Washington courts" by litigating the disputed guaranties here. (*See* MTD at 21.) However, the Drummonds never address the relative congestion of the courts in the Western District of Washington and British Columbia. (*See generally* MTD.) Accordingly, the court does not consider this factor any further and concludes that the Drummonds have not demonstrated that it weighs in favor of dismissal.

With respect to the third factor, the Drummonds argue that this case may present complex choice of law issues. (*See* MTD at 19-20.) They do not explain, however, why a British Columbia court would be better equipped to interpret and apply Washington law than this court would be to interpret and apply British Columbia law. Further, the Drummonds do not address why the court would not apply the guaranties' choice of law clause, which states that each guaranty "shall in all respects be governed by and construed in accordance with the laws of the State of Washington without reference to its choice of law rules." (Spisak Decl. ¶ 12, Exs. D & E; Drummond Decl. ¶ 6, Exs. B & C.) Assuming this clause applies, the third public interest factor—having the trial in a forum that is at home with the law—would weigh in favor of a Washington forum. *Atl. Marine*, 571 U.S. at 63 n.6. In short, the Drummonds have failed to demonstrate that this is an "unusual case" in which the court should grant dismissal based on *forum non conveniens* despite a valid forum selection clause designating Washington as the parties' choice of forum. *See id.* at 64.

### IV. CONCLUSION

Based on the foregoing analysis, the court DENIES the Drummonds' motion to

//

//

//

//

//

//

dismiss for lack of personal jurisdiction, improper venue, and *forum non conveniens* (Dkt. # 6).

Dated this 24th day of October, 2018.

JAMES L. ROBART
United States District Judge